

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MEF:TJS
F. #2004R01353

*One Pierrepont Plaza*
*Brooklyn, New York  11201*

*Mailing Address:*  147 Pierrepont Street
Brooklyn, New York  11201

January 10, 2005

<u>By Hand and ECF</u>

The Honorable Sterling Johnson, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

   Re:  United States v. Alphonse Persico
      <u>Criminal Docket No. 04-911 (SJ)</u>

Dear Judge Johnson:

  The government moves to quash a trial subpoena served on the MDC-Brooklyn in the above-captioned case.  On or about January 7, 2004, the government received a copy of the attached subpoena served by Dale Smith, Esq., counsel to Alphonse Persico, on the Brooklyn-MDC requesting all recorded prison telephone calls, from May 2004 to December 29, 2004, of Giovanni Floridia, a cooperating witness who may be a witness in the above matter.  The subpoena also seeks the inmate's medical and psychiatric records.

  For the reasons set forth below, the attached subpoena violates well-established law and must be quashed.  Indeed, Your Honor recently quashed a virtually identical subpoena in <u>United States v. Edmund Boyle, et al</u>., 03 CR 457 (SJ).

  The government moves to quash the subpoena here on the grounds that the defendant has failed to comply with the requirements of Rule 17 of the Federal Rules of Criminal Procedure, and the material requested in the subpoena is not subject to production under Rule 17, the Jencks Act or <u>Brady</u>.  For these reasons, as set forth below, the Court should quash the subpoena served on the MDC.[1]

---

  [1] As an initial matter, the subpoena should be quashed because the defendant has failed to comply with the United States

I.   The Subpoena Does Not Comply With Rule 17

      The subpoena does not comply with Rule 17 of the Federal Rules of Criminal Procedure.  Rule 17(c) governs the issuance of a subpoena that seeks the production of material in a criminal case.  Rule 17(c) may only be used to obtain materials which would be admissible as evidence at trial.  See Bowman Dairy Co. v. United States, 341 U.S. 214, 221 (1951); United States v. Rich, No. 83 CR. 579 (SWK), 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984) (stating, "Rule 17(c) requires a showing that the materials sought are currently admissible in evidence; it cannot be used as a device to gain understanding or explanation.").

      Rule 17(c) subpoenas are not tools of discovery in criminal cases.  See Bowman, 341 U.S. at 220; United States v. Cherry, 876 F. Supp. 547, 552 (S.D.N.Y. 1995).  Indeed, "courts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16."

---

Department of Justice ("DOJ") Touhy regulations, which require a party seeking information from a component of DOJ, such as BOP, see 28 C.F.R. § 0.1, to summarize the information requested and state with particularity its relevance to the party's case.  See 28 C.F.R. § 16.21 et seq. (promulgated pursuant to 5 U.S.C. § 301); United States ex rel. Touhy v. Ragen, 340 U.S. 462, 467-68 (1951) (finding that the Attorney General may "prescribe regulations not inconsistent with law for 'the custody, use, and preservation of the records, papers and property appertaining to' the Department of Justice.").  Here, the defendant has failed to provide anything to BOP concerning the information sought in the subpoena.  Contrary to DOJ's Touhy regulations, the defendant has not summarized the relevancy or materiality of the requested telephone records and conversations.  Without such a summary, BOP lacks sufficient information to determine whether or not in the first instance to authorize the disclosure of the subpoenaed material.  See, e.g., United States v. Henson, 123 F.3d 1226, 1236 (9th Cir. 1997) (upholding decision to quash subpoena seeking ATF policy manual because defendant did not follow the regulations governing the disclosure of government manuals); United States v. Williams, 170 F.3d 431, 434 (4th Cir. 1999) (finding that "[u]nder the Justice Department regulations, a state criminal defendant is simply required to serve upon agency officials, in addition to his state court subpoena or other demand for information, a response to the United States Attorney's request for a summary of the information sought and its relevance to the proceeding.").

United States v. Jasper, No. 00 CR. 825 (PKL), 2003 WL 1107526, at *1 (S.D.N.Y. Mar. 13, 2003) (quoting United States v. Cuthbertson, 630 F.2d 139, 146 (3d Cir. 1980)); see Bowman, 341 U.S. at 220 (stating, "It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms. . . . Rule 17(c) was not intended to provide an additional means of discovery."). Therefore, the Supreme Court has indicated that a party seeking production of material pursuant to a Rule 17(c) subpoena must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

United States v. Nixon, 418 U.S. 683, 699-700 (1974) (footnote omitted). As this Court has explained, "[t]his four-part test governing the propriety of a subpoena under Rule 17(c) has been construed by the Supreme Court as requiring the party seeking a subpoena to 'clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity.'" United States v. Drakopoulos, No. 02 CR 504 (SJ), 2003 WL 21143080, at *1 (E.D.N.Y. Jan. 13, 2003) (citing Nixon, 418 U.S. at 700).

In Drakopoulos, one of the defendants served a subpoena on Ameritrade seeking "[a]ll tape recordings of any telephone conversations involving Dimitrios Kostopoulos [a potential government witness] during the time period from January 1, 1999 through August 31, 2000." The defendant subsequently limited the request to recorded conversations from February 1, 2000 through August 31, 2000. See id.

In granting Ameritrade's motion to quash the subpoena, this Court found that the defendant failed to satisfy the factors in Nixon, particularly that the subpoena lacked specificity. See id. While the defendant argued that "the telephone recordings he seeks will contain some information that is relevant and useful for his defense," this Court found that he has failed to identify with specificity which phone recordings he seeks. Id. This Court explained that by requesting "every telephone conversation

involving Dimitrios Kostopoulos for every day during a seven-month period, regardless of whom the conversation was with," the defendant "has not requested 'precisely identified conversations and meetings,' nor has he shown 'a sufficient likelihood that each of the tapes contains conversations relevant to the offenses charged in the indictment.'" Id. (quoting Nixon, 418 U.S. at 700). Rather, this Court concluded that the defendant's request "appears in its breadth to be the sort of 'blanket [request] . . . routinely rejected . . . for a lack of specificity.'" Id. (quoting United States v. Hutchinson, No. 97 CR 1146 (ILG), 1998 WL 1029228, at *2 (E.D.N.Y. Dec. 23, 1998)).

In Hutchinson, the defendant served a subpoena on the warden of the Metropolitan Detention Center for all tape recorded telephone conversations of inmate Andrew King, a potential government witness. Without addressing the potential relevancy or admissibility of the taped conversations, Judge Glasser found that "the subpoena lack[ed] the specificity required to survive the government's motion to quash." Id. at *1.

In doing so, the court explained that "such blanket requests have routinely [been] rejected . . . for a lack of specificity." Id. In support, the court relied, among other cases, upon United States v. Noriega, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991), in which the prosecution's use of trial subpoenas issued to a prison to obtain an inmate's tape recorded telephone conversations was an improper use of Rule 17(c). That court found that the subpoena "constituted a broad dragnet aimed at bringing in anything and everything contained in the recordings regardless of their identifiable or foreseeable significance to the charges at issue." Id. at 1493; see also In re Grand Jury Subpoena: Subpoena Duces Tecum, 829 F.2d 1291, 1302 (4th Cir. 1987) (finding subpoena's specificity illusory where it did not refer to specific videotapes and required burdensome searches).

In addition to "the other myriad problems with this subpoena, including the fact that compliance with it would be overly burdensome," the court concluded that "the defendant 'cannot reasonably specify the information contained or believed to be contained' in the tape recorded conversations of the potential witness." Hutchinson, 1998 WL 1029228, at *2 (quoting Noriega, 764 F. Supp. at 1493).

Similarly, in United States v. Merlino, 349 F.3d 144 (3d Cir. 2003), the Third Circuit upheld the district court's denial of the defendants' pre-trial motion for the issuance of a Rule 17 subpoena to BOP for tape recorded conversations of

witnesses cooperating with the government. See id. at 154. In support of their motion, the defendants made the conclusory argument that tapes would help them impeachment government witnesses. United States v. Merlino, No. CRIM. A. 99-0363, 2001 WL 283165, at *6 (E.D. Pa. Mar. 19, 2001), aff'd, 349 F.3d 144 (3d Cir. 2003). In rejecting that argument, the district court found that, in addition to impermissibly seeking impeachment evidence:

> Defendants' (sic) are engaged in a fishing expedition. Rather than specifically targeting evidentiary and relevant material, the proposed subpoena appears to be an attempt by Defendants to unearth a mass of personal communications by potential government witnesses in an attempt to find anything that might impeach their credibility . . . . Defendants have no basis in fact to conclude that the undisclosed tapes have helpful information. Such a factually baseless request is nothing more than a fishing expedition and thus cannot serve as a basis for a Rule 17(c) subpoena.

Id. at *7. As such, the court concluded that "[b]ecause Defendants have failed to meet their burden under Rule 17(c) of demonstrating that the information sought is evidentiary, that the request was not a fishing expedition and that the request was specific," the Court declined to authorize the requested Rule 17(c) subpoena. Id.

In this case, like Drakopoulos, Hutchinson and Merlino, the defendant has not met his burden of specifically identifying the material sought or showing that it is relevant and admissible. The defendant seeks every conversation of an inmate for a period of over six months, without any apparent knowledge of the content of any of the conversations. The defendant, however, has not identified why he is seeking the conversations, how they are evidentiary or what relevance they have to the charges in the indictment.

The defendant's request appears to be nothing more than a general fishing expedition prohibited by Rule 17. From the nature of the request, the defendant seems to speculate that by reviewing hundreds of telephone conversations by a potential government witness, he might find something he could use to impeach the witness's credibility at trial. Not only is such speculation insufficient under Rule 17, it is impermissible to

6

subpoena material for purposes of impeaching prospective witnesses.

Subpoenaed material is "not evidentiary for Rule 17(c) purposes if [its] use is limited to impeachment." Cherry, 876 F. Supp. at 553; see Nixon, 418 U.S. at 700 (holding that while "generally the need for evidence to impeach witnesses is insufficient to require its production in advance of trial," certain evidence, which might be used for impeachment purposes, may validly be subpoenaed under Rule 17(c) as long as there were other "valid potential evidentiary uses" for such evidence).

Having failed to specify the material sought or demonstrate that the telephone conversations would be relevant to the charges in the indictment or admissible at trial as evidence other than for impeachment purposes, the defendant cannot meet his burden under Rule 17. For these reasons, the subpoena should be quashed.

II. The Requested Material Is Not Subject To Production Under The Jencks Act Or Brady

In addition to the fact that the subpoena does not comply with Rule 17, the requested material is not subject to production under the Jencks Act or Brady.

    A. The Requested Material Does Not Constitute Statements In The Possession Of The United States Within The Meaning Of The Jencks Act

The text of the Jencks Act, 18 U.S.C. § 3500, and the decisions that interpret it, make it clear that the requested BOP tape recorded telephone conversations are not statements "in the possession of the United States" within the meaning of the Jencks Act. Under the Jencks Act:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

18 U.S.C. § 3500(b) (emphasis added). Interpreting this language, the Second Circuit has held that the Jencks Act only requires production of government witness statements in the

possession of the prosecutorial arm of the United States and not those in the possession of components of the United States that are not involved in the investigation or prosecution. See United States v. Canniff, 521 F.2d 565, 573 (2d Cir. 1976) (finding that Jencks Act did not require production of presentence report because Probation is an arm of the courts and not subject to the control of the prosecutor); United States v Hutcher, 622 F.2d 1083, 1088 (2d Cir. 1980) (finding that Jencks Act did not require production of government witness' testimony and affidavit contained in bankruptcy court's files because such matters were never in the possession of the prosecutor even though an investigator reviewed bankruptcy court files).

In Merlino, the Third Circuit addressed this very issue in the context of BOP tape recorded telephone conversations. As discussed above, the defendants sought BOP tape recorded conversations of incarcerated witnesses cooperating with the government. Upholding the district court's finding that the government was not required to produce the tapes under the Jencks Act, the court stated:

> Even assuming, with no great confidence, that the recorded statements of [the potential government witnesses] were "related" in any meaningful way to the subject matter of their testimony, we have held that, "[i]n speaking of statements 'in the possession of the United States,' we understand the statute to require production only of statements possessed by the prosecutorial arm of the federal government." In this case, the BOP was not part of the prosecutorial arm of the federal government as it was not at all involved in either the investigation or the prosecution of the defendants.

Merlino, 349 F.3d 144 (quoting United States v. Dansker, 537 F.2d 40, 61 (3d Cir. 1976)).

Thus, it is firmly established that the Jencks Act does not require production of government witness statements that are not in the possession of the prosecutorial arm of the United States, even though such statements may be in possession of other components of the United States. In this case, it is clear that the requested BOP tape recorded conversations are not "in the possession of the United States" within the meaning of the Jencks Act, and hence are not subject to production under the Jencks

8

Act.[2]

      B.    The Requested Material Is Not In The
Possession Of The Prosecution Under Brady

In accordance with Brady v. Maryland, 373 U.S. 83 (1963), the prosecutor has a due process obligation to disclose to a defendant evidence in his actual or constructive possession that is exculpatory and material. See United States v. Bagley, 473 U.S. 667, 681-82 (1985). The government must disclose materials that go to the question of guilt or innocence as well materials that might affect the jury's judgment of the credibility of a crucial prosecution witness. See Giglio v. United States, 405 U.S. 150, 154-55 (1972).

The Brady disclosure requirement encompasses evidence possessed by the prosecutor, and by the prosecution team, such as agents working with the prosecutor on the government's behalf in the investigation and prosecution of the case. See Kyles v. Whitley, 514 U.S. 419, 437 (1995). However, Brady does not require the prosecutor to seek out exculpatory evidence not in the possession of the prosecution team. See id. Thus, Brady does not impose "a duty on the prosecutor's office to learn information possessed by other government agencies that have no involvement in the investigation or prosecution at issue." United States v. Morris, 80 F.3d 1151, 1169 (7th Cir. 1996) (finding that Brady did not require the government to seek out allegedly exculpatory information in the hands of the IRS, SEC or other federal agencies, when it had been unaware of the existence of that information because none of those agencies were part of the team that investigated the case or participated in the prosecution).

---

[2] This conclusion is also supported by the primary purpose underlying the Jencks Act, which is to prevent "any broad or blind fishing expedition among documents possessed by the Government on the chance that something impeaching might turn up." S. Rep. No. 981, 85th Cong. 1st Sess. (1957), 1957 U.S. Cong. and Admin. News p. 1862 (case citation omitted); see also Palermo v. United States, 360 U.S. 343, 346, 350 (1959); United States v. Nickell, 552 F.2d 684, 688 (6th Cir. 1977) (stating, "The purpose of the Jencks Act itself was to restrict a defendant's right to any general exploration of the government's files."). Here, the defendant's blanket request for the telephone conversations is nothing more than an impermissible, blind fishing expedition undertaken with the faint hope that something with impeachment value might turn up.

Accordingly, the court in <u>United States v. Avellino</u>, 136 F.3d 249 (2d Cir. 1998), recognized that "the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt 'a monolithic view of government' that would 'condemn the prosecution of criminal cases to a state of paralysis.'" <u>Id.</u> at 255; <u>see also</u> <u>United States v. Quinn</u>, 445 F.2d 940, 944 (2d Cir. 1971) (finding "completely untenable" the position that "knowledge of any part of the government is equivalent to knowledge on the part of this prosecutor" (internal quotations omitted)).

Likewise, in <u>United States v. Locascio</u>, 6 F.3d 924 (2d Cir. 1993), the court held that the <u>Brady</u> doctrine was not violated by the prosecutor's failure to disclose FBI interview reports prepared by FBI agents who were not involved in the FBI's investigation or prosecution of the defendant because there was "no evidence that the prosecution team in the instant case was aware of the reports." The court stated that "[w]e will not infer the prosecutor's knowledge simply because some other government agents knew about the report." <u>Id.</u> at 949-50; <u>see also</u> <u>Pina v. Henderson</u>, 752 F.2d 47, 49-50 (2d Cir. 1985) (finding that <u>Brady</u> doctrine did not require disclosure of state parole officer's report by state prosecutor who did not possess or know of the alleged exculpatory information in the report because the parole officer did not participate in the investigation or prosecution and was not an "arm of the prosecutor"); <u>Quinn</u>, 445 F.2d at 943-44 (declining to impute knowledge under <u>Brady</u> of a Florida prosecutor to a federal prosecutor in New York).

In <u>Merlino</u>, the Third Circuit also addressed the prosecution's <u>Brady</u> obligation to "retrieve, review, or disclose the 2,285 [cooperating witness BOP] tapes that were not then in the physical possession of the prosecution." <u>Merlino</u>, 349 F.3d at 154. Explaining that "it is one thing to require honest searches, reasonable in scope, of unrelated files for specific identifiable information, but quite another to send prosecutors on open-ended fishing expeditions," the court found that the defendants' request "would have sent the prosecution on an open-ended fishing expedition, nothing more and nothing less." <u>Id.</u>

As these cases make clear, a prosecutor does not have constructive possession of information in the possession of persons working in the numerous components of the United States Government who are not part of the prosecution team. While <u>Brady</u> holds a prosecutor accountable for relevant information in

possession of the group of persons who are working with, and on behalf of, the prosecutor in a particular investigation or prosecution, it does not extend to BOP officials, not part of the prosecution team, who routinely tape record conversations of all BOP inmates throughout the federal prison system for institutional purposes. Therefore, the requested BOP tape recorded conversations are not in the possession of the prosecution and thus not subject to production under Brady.

III. The Request for Medical/Mental Health Records is Improper

The subpoena at issue also seeks MDC medical and psychiatric records for the same inmate. Again, this is a fishing expedition. The defendant has made a blanket request to invade the inmate's privacy without setting forth any particularized justification. Moreover, the defendant is again misusing a Rule 17 subpoena to obtain potential impeachment material. The proper use of a Rule 17 subpoena has been outlined above. The defendant's broad request for all medical and psychiatric records is as inappropriate as his request for recordings of the inmates telephone calls.

Conclusion

For all of the foregoing reasons, the Court should quash the subpoena served on the Brooklyn-MDC by Dale Smith, Esq. on behalf of defendant Alphonse Persico.

Respectfully submitted,

ROSLYNN R. MAUSKOPF
United States Attorney

By:  /s/ Thomas J. Seigel
     Thomas J. Seigel
     Assistant U.S. Attorney
     (718) 254-6339

Encl.

cc:  Dale Smith, Esq.
     Bureau of Prisons