MEF:TJS
F.# 2004R01353

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

                             04 CR 911 (SJ)

ALPHONSE T. PERSICO,
JOHN J. DEROSS, and
CARMINE DEROSS, III,

        Defendants.

- - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION
## <u>FOR AN ANONYMOUS, ESCORTED AND PARTIALLY SEQUESTERED JURY</u>

                                      ROSLYNN R. MAUSKOPF
                                      United States Attorney
                                      Eastern District of New York
                                      147 Pierrepont Street
                                      Brooklyn, New York 11201

Katya Jestin
Deborah Sue Mayer
Thomas J. Seigel
Assistant U.S. Attorneys
   (Of Counsel)

## PRELIMINARY STATEMENT

The government hereby moves for an anonymous, fully escorted and partially sequestered jury for the trial of defendants Alphonse T. Persico, John J. DeRoss and Carmine DeRoss, III.  For the reasons set forth below, the government requests that (a) the names, addresses and places of employment of the prospective jurors not be revealed to either the parties or their attorneys; (b) from the time each juror survives any challenges for cause and peremptory challenges until the end of the trial, the jurors be escorted by representatives of the United States Marshals Service to and from the courthouse each day, and at all times during recesses; and (c) jurors be sequestered in the courthouse during the lunch break for the entirety of the trial and deliberations.

In the context of an organized crime family with a long history of violence and obstruction of justice, the measures proposed by the government are necessary to assure the public's right to a fair trial by protecting the jury from interference. These precautions will not deprive the defendants of meaningful jury selection nor diminish the presumption of innocence.

## STATEMENT OF FACTS

The upcoming trial involves two violent incidents: the murder of Colombo family underboss William "Wild Bill" Cutolo and the attempted murder of Colombo family soldier Joseph Campanella. Lead defendant Alphonse "Allie Boy" Persico was the acting boss of the Colombo Family, defendant John "Jackie" DeRoss was the underboss of the Colombo Family and Carmine "Skippy" DeRoss, III, was an associate. Persico and John DeRoss are also charged with witness tampering for their attempt to intimidate the immediate family of William Cutolo, Sr. following his murder. This trial, therefore, involves the highest ranking members of the Colombo family facing the most serious of charges.

In the January 2006 trial of Colombo associates Michael Spataro and Carmine DeRoss for their part in the attempted murder of Campanella, Your Honor ordered an anonymous jury and sequestered the jury during lunch. In the April 2004 trial of Vincent DeMartino and Giovanni Floridia for their roles in the Campanella shooting, Judge Dearie ordered an anonymous jury with questionnaires. Here, a fortiori, the Court should order an anonymous jury selected through questionnaires which will be fully escorted and sequestered while at the courthouse.

As discussed in detail below, this trial has all the ingredients necessary to make it the quintessential example of a case requiring an anonymous, fully escorted and partially

sequestered jury: (1) defendants who are leaders of a violent enterprise dedicated to subversion of the judicial process; and (2) charges involving murder and witness tampering.

ARGUMENT

The government moves for an anonymous, fully escorted and partially sequestered jury.  As shown below, such measures are necessary to ensure the jury's impartiality and will neither deprive the defendant of meaningful jury selection nor diminish the presumption of innocence.

I.    ANONYMITY IS A WELL-ESTABLISHED MEANS OF ENSURING THE
      IMPARTIALITY OF A JURY

The Second Circuit has long recognized that anonymous juries are often necessary to protect the integrity of trials and ensure an impartial jury.  See, e.g., United States v. Persico, 832 F.2d 705, 717 (2d Cir. 1987) (in case where defendant Alphonse T. Persico, a leader of the Colombo Family and the lead defendant in the instant case, was charged with racketeering and bribery, the court approved use of anonymous jury, based on "the violent acts alleged to have been committed in the normal course of Colombo Family business, the Family's willingness to corrupt and obstruct the criminal justice system, and the extensive publicity" generated by the case); see also United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995); United States v. Thai, 29 F.3d 785, 800-01 (2d Cir. 1994); United States v. Amuso, 21 F.3d 1251, 1264-65 (2d Cir. 1994) (Luchese Family

prosecution); <u>United States v. Locascio</u>, 6 F.3d 924, 946-47 (2d Cir. 1993) (Gambino Family prosecution).

Jurors whose identities are known are subject to pressure, intentionally or unintentionally, by criminal associates, relatives, friends, colleagues or others to return a verdict based on factors other than the evidence in the case. Those risks will be minimized if the identities of the jurors remain undisclosed.  Moreover, if the jurors know that their identities are publicly known, that fact may subtly and unconsciously impair their impartiality, even in the absence of actual tampering.  An anonymous jury, however, will be in the best position to resolve the issues of this case as sworn to do, without fear or favor to any party and without concern about being personally attacked, threatened, or second-guessed for its verdict.

The Second Circuit has adopted a two-step process for use in potential anonymous jury cases.  A district court should first determine whether there is strong reason to believe that the jury needs protection.  If there is, the court should then take reasonable precautions to minimize any prejudice that an anonymous jury might entail.  <u>See</u>, <u>e.g.</u>, <u>Thai</u>, 29 F.3d at 801; <u>United States v. Paccione</u>, 949 F.2d 1183, 1192 (2d Cir. 1991); <u>United States v. Barnes</u>, 604 F.2d 121, 141 (2d Cir. 1979). Within those general parameters, the decision to use an anonymous

jury is left to the sound discretion of the trial court.  <u>See</u>,
<u>e.g.</u>, <u>United States v. Wong</u>, 40 F.3d 1347, 1376 (2d Cir. 1994);
<u>Paccione</u>, 949 F.2d. at 1192; <u>United States v. Maldonado-Rivera</u>,
922 F.2d 934, 971 (2d Cir. 1990).

    The Second Circuit has identified five factors relevant
to determining the propriety of ordering an anonymous jury: (1)
the seriousness of the charges; (2) the dangerousness of the
defendant; (3) the defendant's ability to interfere with the
jury, either by himself or through a criminal organization of
which he is a member; (4) previous attempts to interfere with the
judicial process by the defendant or his associates; and (5) the
amount of public and media attention expected during the trial
that might expose the jurors to extraordinary pressures impairing
their ability to be fair.  <u>See</u> <u>Aulicino</u>, 44 F.2d at 1116; <u>Thai</u>,
29 F.3d at 801; <u>Paccione</u>, 949 F.2d at 1192-93; <u>United States v.
Vario</u>, 943 F.2d 236, 240 (2d Cir. 1991); <u>United States v. Tutino</u>,
883 F.2d 1125, 1132 (2d Cir. 1989); <u>Persico</u>, 832 F.2d at 717
(anonymous jury appropriate based on history of violence,
willingness to obstruct justice, and expected publicity).[1]  Just

_____

    [1]   <u>See</u> <u>also</u> <u>United States v. Ferguson</u>, 758 F.2d 843, 854
(2d Cir. 1985) (anonymous jury appropriate where evidence at
trial would include discussions of killing government witnesses
and where district court articulated need to protect jurors'
"privacy from the press"); <u>United States v. Thomas</u>, 757 F.2d
1359, 1365 (2d Cir. 1985); <u>United States v. Barnes</u>, 604 F.2d 121,
141-42 (2d Cir. 1979) (anonymous jury appropriate due to
extensive pretrial publicity and abundant allegations of
dangerous and unscrupulous conduct).

6

last year, Your Honor applied this test in granting the
government's motion for an anonymous and partially sequestered
jury in United States v. Cacace, 321 F. Supp. 2d 532, 534
(E.D.N.Y. 2004) (racketeering trial of high-ranking member of the
Colombo Family).

    A.   Defendants With Ties To Organized Crime

        Courts in this circuit have ordered anonymous and
sequestered juries in numerous cases involving defendants with
ties to organized crime.  See, e.g., Amuso, 21 F.3d at 1264-65;
Locascio, 6 F.3d at 946-47; Vario, 943 F.2d at 240 (2d Cir.
1991); United States v. Persico, 621 F. Supp. 842 (S.D.N.Y.
1985), aff'd, 832 F.2d 705, 717 (2d Cir. 1987).

        Indeed, that practice has been followed repeatedly in
this district.  See, e.g., United States v. Spataro, 04 CR 911
(S-1) (SJ) (granting government's request for anonymous and
partially sequestered jury); Cacace, 321 F. Supp. 2d 532
(E.D.N.Y. 2004) (Johnson, J.) (granting the government's request
for an anonymous and partially sequestered jury (Colombo
family)); United States v. Locascio, 357 F. Supp. 2d 558
(E.D.N.Y. 2005) (Amon, J.) (same (Gambino family)); United States
v. DeMartino, 03 CR 285 (RJD) (anonymous jury (Colombo Family));
United States v. John DeRoss, 01 CR 56 (RR) (anonymous jury for a
defendant in this case (Colombo Family)); United States v.
Gregory Scarpa, Jr., 94 CR 1119 (RR) (anonymous jury (Colombo

Family)) <u>United States v. Amuso</u>, 90 CR 446 (EHN) (fully anonymous and fully sequestered jury (Luchese family)); <u>United States v. Legrano</u>, 93 CR 1231 (ARR) (fully anonymous and partially sequestered jury (Colombo Family)); <u>United States v. Cutolo</u>, 93 CR 1230 (EHN) (same (Colombo Family)); <u>United States v. Bisaccia</u>, 93 CR 479 (ILG) (same); <u>United States v. Malpeso</u>, 93 CR 1365 (RJD) (same (Colombo family)); <u>United States v. Persico</u>, 92 CR 351 (CPS) (for <u>defendant in this case</u> (Colombo Family)); <u>United States v. Orena</u>, 93 CR 1366 (ERK) (same (Colombo Family));; <u>United States v. Orena</u>, 92 CR 351 (S-4)(JBW) (three trials) (same, except jury only partially anonymous (Colombo Family)), <u>aff'd</u>, 32 F.3d 704 (2d Cir. 1994).

In <u>United States v. Vario</u>, the Second Circuit emphasized that the mere fact that a case involves "organized crime" does not, by itself, justify use of an anonymous jury unless there is "something more." 943 F.2d at 241. "This 'something more' can be a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendant and his associates such as would cause a juror to reasonably fear for his own safety." <u>Id</u>. As described below, these factors are clearly present in this case.

While <u>Vario</u> requires "something more," a defendant's organized crime status is nonetheless a highly relevant factor when considering a motion for an anonymous jury.  In <u>Cacace</u>, Your Honor noted that the defendant, as a leader of the Colombo Family, would "have the means to interfere with the judicial process."  321 F. Supp. 2d at 535.  Further, as Judge Amon wrote in <u>Locascio</u>, "Martino [a Gambino Family captain] . . . has strong and influential ties to an organization whose members have a documented history of seeking to tamper with juries and who could provide the support necessary to achieve that objective."  357 F. Supp. 2d at 562.  Defendants Persico and John DeRoss represent the center of power in the Colombo Family and have dozens of committed subordinates who would gladly aid any effort to tamper with the judicial process.

B.  <u>Media Coverage</u>

As set forth below, the present case has attracted media attention already.  Given the unique status of the Persico family within the Colombo family and the infamous disappearance of Cutolo, Sr., the case will certainly attract more media attention in the weeks leading up to and during the trial.  In an organized crime matter, press attention is of particular concern for two reasons: (1) the danger that members and associates of the Colombo Family will learn identifying information about jurors through press reports; and (2) the jurors' fear that press

reports could lead to their identification by the Colombo Family and the effect of that fear on their deliberations.  Pre-trial publicity is a legitimate basis for impaneling an anonymous jury because such publicity can "enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public." Vario, 943 F.2d at 240 (quoting Persico, 621 F. Supp. at 878). This, of course, is of great concern where the trial involves a violent criminal enterprise with members sworn to engage in illegal conduct, including obstruction of justice, in order to preserve its existence.[2]

II.  AN ANONYMOUS, ESCORTED AND PARTIALLY SEQUESTERED JURY IS NECESSARY IN THIS CASE

Employing the standards set forth by the Second Circuit, it is clear that the interests of justice would best be served by protecting the identity of the members of the jury in the instant case.  As detailed below, there exists compelling evidence that defendants murdered underboss William Cutolo, Sr. to prevent a power struggle, attempted to murder soldier Joseph Campanella to prevent his cooperation and threatened the

_____

[2]Indeed, courts have ordered anonymous juries in cases with extensive media coverage, even though the defendants had no documented history of jury tampering.  See, e.g., United States v. Chammies, 864 F.2d 16, 18 (3d Cir. 1988) (upholding sequestered jury in trial of Philadelphia judge accused of extortion on ground trial would generate "significant amounts of publicity" that would interfere with the jury's ability to remain impartial.).

immediate family of Cutolo, Sr. to keep them from implicating Persico in his murder.  Furthermore, the Colombo Family and its members and associates have a well-documented history of interference with the judicial process, all of which weighs heavily in favor of using an anonymous jury.  Finally, the fact that this case has received and will likely continue to receive press attention provides additional support to the government's motion.

A.   The Defendants Are Dangerous Individuals Charged with Murder, Murder Conspiracy and Witness Tampering

Persico, John DeRoss and Carmine DeRoss face the possibility of life imprisonment if convicted of all counts.  As Judge Casey of the Southern District recently recognized in a Gambino family case involving murder and kidnaping charges, "[t]he seriousness of the charges, carrying the possibility of life imprisonment if proven, create significant incentives to threaten jurors."  United States v. Peter Gotti, 2004 WL 2274712, at *2 (S.D.N.Y. Oct. 7, 2004) (granting request for an anonymous jury).  Moreover, Persico, John DeRoss and Carmine DeRoss were part of a plot to kill Campanella because he might have been an informant against the Colombo Family.  In Gotti, Judge Casey observed: "It is no great leap from the intimidation and murder of potential informants to jury tampering."  Id. at *3.

In light of the seriousness of the charges, Persico and John DeRoss's high ranks and long history with the Colombo family

and their attempts to obstruct justice in this and other cases, this motion presents a rock solid foundation for this Court to exercise its discretion to order an anonymous, fully escorted and partially sequestered jury.

      1.   <u>Alphonse "Allie Boy" Persico</u>

During the time of the murder and attempted murder charged, Alphonse "Allie Boy" Persico was the acting boss of the Colombo family.  Indeed, at the recent <u>Spataro</u> trial, three cooperating witnesses identified him as such.  He has a long history with the Colombo family marked by violence and corruption.

Persico has three prior felony convictions.  In 1985, he was convicted at trial in the Southern District of New York of racketeering, racketeering conspiracy, and bribery in connection with his efforts to bribe an official of a federal correctional institution in order to obtain extra privileges for his father. In that case, an anonymous jury was ordered.  Persico was sentenced to 12 years' incarceration and ultimately served approximately 7 years.  While on supervision in 1996, Persico was found associating with a convicted felon and in possession of $19,300 in U.S. currency and numerous loansharking records.  The probation department declined to initiate violation proceedings.

In September 1998, United States Coast Guard officers boarded Persico's boat in the vicinity of Key West, Florida and

found him to be in possession of a shotgun and pistol.  He was ultimately convicted upon a guilty plea by the Southern District of Florida for being a felon in possession of a firearm and served 18 months' imprisonment.

On December 20, 2001, Persico pleaded guilty in the Eastern District of New York to racketeering, racketeering conspiracy and substantive crimes of loansharking and money laundering.  Persico was sentenced to 13 years imprisonment based on that conviction.  He is currently serving this sentence.

In addition, Persico's criminal history includes a 1983 arrest for heroin distribution, which was dismissed, and an acquittal in 1993 for racketeering conspiracy, a case in which Persico was charged with several murder conspiracies.  In that trial, Judge Sifton ordered an anonymous jury.  The jury in that case found that one of the murder predicates against Persico had been proven, the 1985 murder of Steven Piazza, but acquitted him of the racketeering conspiracy count because it found no second predicate proven.

In the instant matter, Persico is charged with the murder of Cutolo, Sr., his underboss, the attempted murder of Campanella, and witness tampering relating to his efforts to intimidate the immediate family of Cutolo, Sr. to prevent them from implicating him in the murder.

13

   2.   John "Jackie" DeRoss

John "Jackie" DeRoss was a longtime captain who rose to the position of underboss following the murder of Cutolo, Sr.

Jackie DeRoss also has three felony convictions.  In 1986, he was convicted of racketeering after a trial (anonymous jury) in the Southern District of New York, based on predicate acts of extortion, labor racketeering, and bribery.  He was sentenced to 12 years' imprisonment and was paroled in June 1993. In 1997 he violated his parole by associating with Cutolo, Sr. and was sentenced to an additional four months' incarceration.

In 2002, DeRoss was convicted at trial (anonymous jury) in the Eastern District of New York of extortion and was sentenced to 87 months incarceration.

DeRoss was indicted again in 2003 in the Eastern District of New York and charged with labor racketeering.  On October 12, 2004, he pleaded guilty before Your Honor to racketeering based on two predicates of mail fraud.  He was sentence to 46 months to run concurrently to his 2002 sentence.

DeRoss, like Persico, is charged with the Cutolo murder, the attempted murder of Campanella and witness tampering relating to threats he made to Cutolo's immediate family on behalf of Persico.

### 3. Carmine "Skippy" DeRoss

Carmine DeRoss, III, is the nephew of Colombo family underboss Jackie DeRoss.  As the Court heard in the recent Spataro trial, DeRoss was a Colombo family associate would was trusted to send and receive messages for Jackie DeRoss.  In 2001, Carmine DeRoss's role as messenger for the Colombo family underboss became particularly important because at that time Jackie DeRoss was on pretrial release and subject to home confinement and electronic monitoring.  Those messages served to facilitate the attempted murder of Joseph Campanella.  That murder, meant to silence a potentially devastating cooperating witness, was, at its core, the most extreme form of witness tampering.

In the time period following the failed attempt to murder Campanella, Vincent DeMartino, the shooter in the July 16, 2001 attempt, sought to try again.  There was substantial testimony and exhibits on this at the recent Spataro trial.  A cellular telephone used by DeMartino was intercepted pursuant to court authorization from May 2002 to September 2002.  Those interceptions revealed that DeMartino obtained FBI 302s in an attempt to convince leaders in the Colombo family that they should make another attempt to kill Campanella because DeMartino believed that these reports documented that Campanella was a cooperating witness.  In several late May and early June 2002

conversations, DeMartino and Colombo associate Frank "Frankie Notch" Ianacci (also identified in Campanella's trial testimony as a hit team participant in the Colombo War) discussed what was in the "papers" – that is, the FBI 302s – and the need to distribute them to others.  In a May 20, 2002 conversation (Call 118), Ianacci and DeMartino discussed information written in an FBI 302 about the murder of William Cutolo, Sr.  Ianacci asked if "Joey" (Campanella) was the person providing the information.  DeMartino replied that the source was "the son," meaning William Cutolo, Jr., who at the time was cooperating with the FBI, but that "Joey is talking to the son."  DeMartino added: "He [Campanella] knows he's [Cutolo, Jr.] a rat so he's giving him all the info . . . you know . . ."  Iannaci commented: "He's [Campanella] cooperating that way."  DeMartino responded: "Yeah." In subsequent conversations, DeMartino made clear that he had given the "papers" to someone else and needed to get them back.

On June 13, 2002, DeMartino was surveilled meeting with Dino Calabro and Thomas "Tommy Guns" Geoli, both high-ranking members of the Colombo family.  Following that meeting, DeMartino called Carmine DeRoss at 6:12 p.m. (Call 877).  The following is a pertinent excerpt:

> DeMartino:      I'd just like to catch up with [you] for a
>                 couple of minutes.  Remember what we were
>                 talking about?
>
> DeRoss:         Yeah.

DeMartino:       The papers there?

DeRoss:          Yeah.

DeMartino:       I wanted to know if I can get them.

DeRoss:          Okay.

DeMartino:       Denying everything.

DeRoss:          From what I understand, that other one that
                 you were talking about . . .

DeMartino:       Yeah.

DeRoss:          Is not the same situation.

DeMartino:       Yeah, he's saying that it is.

DeRoss:          Nah, it's not.

DeMartino:       Yeah.

DeRoss:          But, uh

DeMartino:       That's what I said.

DeRoss:          Yeah.

DeMartino:       No, no. no.  It's wrong . . . this guy is not
                 saying the truth.  Yeah, alright, I said
                 listen, if I showed it to you in fucking
                 black and white, would that be alright?

DeRoss:          Yeah.

DeMartino:       So is there anyway I can ... we can ... or
                 no?

DeRoss:          Yeah, uh . . .

DeMartino:       Cause that'll be a fucking home run for me.

The home run for DeMartino would be the opportunity to take

another shot at Campanella.  As the person who communicated

directly to Floridia and DeMartino the underboss's desire to have Campanella killed in 2001, Carmine DeRoss clearly understood, in the above June 2002 conversation, that DeMartino was making the case for another hit attempt.  Just as before, Carmine DeRoss was willing and able to help DeMartino to murder Campanella.

Though Carmine DeRoss is not a made member of the Colombo family, he is particularly important because he was the accepted spokesman for the Colombo family underboss. Accordingly, his vital role to the functioning of the Colombo family and his willingness to violate the strict bail conditions of his uncle also support the government's request for an anonymous jury.  Finally, of course, Your Honor ordered an anonymous jury for Carmine DeRoss's recent trial.

B.  The Colombo Family has Intimidated and Tampered with Witnesses and Obstructed Justice in the Past and will not Hesitate to do so Again

As the Second Circuit has noted, evidence of "a demonstrable history or likelihood of obstruction of justice on the part of the defendant[s] or others acting on [their] behalf . . . would be sufficient in and of itself in an appropriate case to warrant an anonymous jury regardless of whether the defendant was a reputed mobster or associated with a recognized organized crime family."  Vario, 943 F.2d at 241.

The Colombo Family has a long history of obstruction of justice and jury tampering.  In both 1986 and 1994, when

defendant Persico was previously tried on RICO charges, the courts used anonymous juries.  In the 1994 case, Judge Sifton ordered an anonymous jury because, among other things, a credible government source "advised agents of the Federal Bureau of Investigation that a high ranking member of the Persico faction has said that efforts would be made to tamper with the jury in order to avoid a conviction."  United States v. Persico, 1994 WL 150837 at *2 (E.D.N.Y. Apr. 20, 1994).

An anonymous jury was also employed in Alphonse Persico's 1986 case.  Alphonse Persico was convicted of racketeering and bribery and sentenced to 12 years in prison. The trial evidence proved beyond a reasonable doubt that Alphonse Persico helped arrange repeated bribes to federal corrections officials.  See Persico, 646 F. Supp. 752, 757 (S.D.N.Y. 1986). In return, his father Carmine Persico, boss of the Colombo Family, received a low security classification and furloughs to which he was not entitled.  In addition, Carmine Persico received virtually unlimited access to both the prisoners' telephone and an official unmonitored prison telephone, which allowed Carmine Persico to continue to exercise control over his crime family from prison.

Here, Persico has a stronger incentive to make use of the resources and personnel of the Colombo family to corrupt the jury because he is facing life in prison

A further example of the need for an anonymous jury in this case is an event that occurred in <u>United States v. Russo</u>, 98 CR 817 (DGT), a recent case before Judge Trager.  In 1994, defendant Andrew Russo, a long-time Colombo family captain made efforts to contact one of the anonymous jurors in a Colombo Family War case tried before Judge Sifton, in the hopes of influencing the verdict.  When the government began to investigate the attempted jury tampering, Russo and a coconspirator hid a key witness so that she could not be served with a grand jury subpoena.  Russo and the primary coconspirator, Dennis Hickey, were ultimately indicted for and convicted of, <u>inter</u> <u>alia</u>, endeavoring to impede the due administration of justice, in violation of 18 U.S.C. § 1503.

The <u>Russo</u> case is alarming for several reasons.  First, it shows that the Colombo Family is dedicated to jury tampering as a trial strategy.  If a regular jury had been used in <u>Russo</u>, it is almost certain that the jurors would have been located, contacted and threatened or bribed.  Second, it proves that the trial process is not safe from Colombo Family efforts to obstruct justice even with an anonymous jury.  Thus, escorting the jury and vigilance in other regards is a necessity.

The Colombo Family has also liberally used the sanction of murder to eliminate suspected informants and federal witnesses who could help bring their leaders and others in their crime

family to justice.  The late Anthony Coluccio (1989), Thomas G. Ocera (1989), Gioachino "Jack" Leale (1991), and James Randazzo (1993) were all murdered by other Colombo Family members concerned that they were "weak links" who might cooperate with the government.  Carmine Imbriale, a Colombo Family associate who became a cooperating witness, was also the target of a murder conspiracy among members and associates of the Colombo Family.  A member of the Colombo Family sought to murder the mother of Joseph Ambrosino after he agreed to cooperate.  Colombo Family acting captain Gregory Scarpa Jr. ordered the murder of numerous persons he believed might become or had become witnesses against his crew.

This predisposition for eliminating potential witnesses remains firmly in place.  In October 2000, Frank Leto, a soldier in the Colombo Family, was intercepted during court-authorized electronic surveillance discussing with fellow Colombo Family member Frank Campione, in chilling terms, how the Colombo Family should handle witnesses who cooperate with the government.  Leto stated: "[A]nybody who becomes a rat, kill their wife, kill their kids, kill 'em all.  The next [expletive], the next time, you gotta think, hello, look what they do to rats and families."  This conversation was intercepted in Long Island, New York on October 24, 2000.

Finally, as Colombo associate Giovanni Floridia testified in the recent <u>Spataro</u> trial before Your Honor, the Colombo family sought to kill Joseph Campanella in July 2001 because they feared he was cooperating or would cooperate.

Additionally, apart from specific instances of interference with the judicial process by the Colombo Family, it has become evident after several trials in this district, <u>see</u>, <u>e.g.</u>, <u>Orena</u>, 32 F.3d at 704; <u>United States v. Brady</u>, 26 F.3d 282 (2d Cir. 1994); <u>United States v. Amato</u>, 15 F.3d 230 (2d Cir. 1994); <u>United States v. Sessa</u>, 92 CR 351 (JBW); <u>Persico</u>, 92 CR 351 (S-9)(CPS); <u>Malpeso</u>, 93 CR 1365 (S-2)(RJD); <u>Scarpa</u>, 94 CR 1119 (RR), that the Colombo Family is a large criminal organization.  These trials featured testimony from numerous accomplice witnesses detailing the large number of members and associates and the breadth, scope, and boldness of the Colombo Family's criminal activities.  The large size of the Colombo Family increases the likelihood that the defendants or their confederates will be able to locate a juror and will possess the means to intimidate or bribe that juror.

In sum, the numerous incidents of the obstruction of justice and tampering with and intimidation of witnesses that have been detailed above provide substantial evidence of the defendants' and their confederates' disregard for the legal and judicial process and of their propensity to unlawfully influence

a jury.  An anonymous, fully escorted and partially sequestered jury is therefore required in this case.

C.   Public and Media Attention to this Case
     Warrants Anonymity

Where the degree of public and press attention to a given case is such as to risk excessive pressures on the jury, courts have employed anonymity.  See, e.g., Barnes, 604 F.2d at 141 ("The court's decision as to anonymity and sequestration comported with its obligation to protect the jury, to assure its privacy, and to avoid all possible mental blocks against impartiality."); United States v. Persico, 1994 WL 150837 at *2 (E.D.N.Y. April 20, 1994) (citing extensive media coverage of Colombo Family activities as partial basis for granting anonymous jury motion); see also Cacace, 321 F. Supp. 2d at 536.

There have been multiple newspaper articles about the present case.  See Jerry Capeci, FBI Builds Case in Storied Rubout, New York Sun, October 20, 2005, at 2; John Marzulli, Bail Denied for Mechanic Steered Hit Plot, New York Daily News, October 20, 2004; Anthony M. DeStefano, Disappearance of Underboss, Newsday, October 15, 2004, at A22; Thomas J. Lueck, Crime Figures Accused of Murder, N.Y. Times, October 15, 2004, at B6.  Because of the extensive press coverage of the DeMartino trial,[3] it appears that press coverage will only intensify as

---

[3] There were many articles written about the April/May 2004 trial of DeMartino and Floridia for the shooting of Joseph

this trial approaches.  Indeed, during the January 2006 Spataro
trial before Your Honor, there was a front page article in the
New York Daily News.  Given that an acting boss and an underboss
of the Colombo family are defendants in the upcoming trial for
the murder of an underboss, it is likely that there will be much
more press attention for the May 2006 trial.

In recent, well-publicized criminal cases throughout
the country, jurors have been subject to significant press
attention and pressure which has interfered with the
confidentiality and sanctity of the jury.  Jurors and dismissed
jurors have been interviewed, analyzed and sometimes criticized
in the media.  In this climate, the press will deem jurors fair
game, and juror names and background information newsworthy,
unless such information is anonymous.  While most members of the

---

Campanella.  See, e.g., Anthony M. DeStefano, Mob Convictions:
Reputed Colombo Soldier and Associate are Found to Have Taken
Part in Botched Coney Island Hit, Newsday, May 7, 2004, at A22;
Anthony M. DeStefano, Alleged Botched Mob Hit, Newsday, May 3,
2004, at A16; Anthony M. DeStefano, Mob Trial Goal: Show Who
Botched Hit, Newsday, April 30, 2004, at A16; John Marzulli, Love
is Blond at Mob Trial, New York Daily News, April 30, 2004, at 5;
Kati Cornell Smith, Smokin' Gun Moll - 2-Timing Wife a Hit on
Stand, New York Post, at 5; Kati Cornell Smith, Turncoat Mobster
A Wives-Guy - Gal Pal a Mafia Spouse, New York Post, April 28,
2004, at 3; Anthony M. DeStefano, Mob Trial Exhibit: Defendant is
a Real Cutup, Newsday, April 28, 2004, at A15; John Marzulli, Mob
Rat Fingers Underboss, New York Daily News, April 27, 2004, at
33; Kati Cornell Smith, Mobster: Ex-Pal Put Hit on Me, New York
Post, April 27, 2004, at 8; John Marzulli, Turncoat on Warpath,
New York Daily News, April 26, 2004, at 24; and Kati Cornell
Smith, Mob Canary to Warble Hit Song Today, April 26, 2004, at
18.

press would likely respect a court admonition not to communicate with a sitting juror, such an order would not prevent the press from attempting to interview jurors' family members, friends, neighbors and co-workers.  Nor would it prevent the press from seeking to arrange post-verdict interviews of jurors, or keep others who learned of a juror's identity through the press from approaching the juror.  Even if none of this were to come to pass, jurors who are not anonymous may reasonably fear that they will become targets for the press either during the trial or after the trial is over.  Those jurors may also reasonably conclude that press attention would inevitably (though not intentionally) aid members and associates of the Colombo Family in their efforts to locate jurors.  This fear would undoubtedly disturb the jurors' ability to deliberate in an impartial manner.  Use of an anonymous jury will ensure that jurors return a verdict based solely on the evidence presented at trial, and not out of fear that they will be subject to public scrutiny or personal obloquy from the press, from the Colombo family, or from relatives, friends, neighbors or co-workers, because of their verdict.

III. THE USE OF AN ANONYMOUS AND ESCORTED JURY WILL NOT
     DEPRIVE THE DEFENDANTS OF MEANINGFUL JURY SELECTION
     OR DIMINISH THE PRESUMPTION OF INNOCENCE

          Once a district court determines that there is strong reason to believe that the jury needs protection, it may impanel

an anonymous jury provided that it takes reasonable precautions to minimize any potential prejudice therefrom.  <u>See</u> <u>Thai</u>, 29 F.3d at 801; <u>Amuso</u>, 21 F.3d at 1264-65; <u>Paccione</u>, 949 F.2d at 1192; <u>Vario</u>, 943 F.2d at 239; <u>Tutino</u>, 883 F.2d at 1132; <u>Persico</u>, 832 F.2d at 717-18; <u>Thomas</u>, 757 F.2d at 1365.  A defendant has two legitimate concerns that are potentially affected by a decision to impanel an anonymous jury: the right to make informed choices during the jury selection process and the right to be tried by jurors who are not prejudiced by reason of their anonymity.  Both of these concerns can be readily addressed.

> A.    Impaneling an Anonymous Jury Does Not Burden
>        the Defendants' Ability to Make Informed Choices
>        During Jury Selection

Although a defendant has the right to a meaningful <u>voir dire</u> of potential jurors, <u>see</u> <u>Rosales-Lopez v. United States</u>, 451 U.S. 182, 188 (1981), the decision as to the questions to be asked in <u>voir dire</u> largely rests within the informed discretion of the trial judge.  <u>See</u> <u>United States v. Silva</u>, 715 F.2d 43, 50 (2d Cir. 1983) (absent a clear abuse of discretion, trial court's ruling on questions to be asked will not be disturbed); <u>Barnes</u>, 604 F.2d at 137-140 ("As long as a defendant's substantial rights are protected by a <u>voir dire</u> designed to uncover bias as to issues in the case and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal.").  As Judge Glasser noted in <u>United States v. John</u>

Gotti: "The jury selection process (voir dire) is not a matter of constitutional dimension and the selection of an anonymous jury was implicitly held to be constitutional in Barnes."  777 F. Supp. 224, 227 (E.D.N.Y. 1991) (citation omitted).

The information that will be kept from the parties and counsel if this motion is granted is not meaningful to the jury selection process.  The names, addresses and places of employment of the prospective jurors are not necessary to an informed choice.  See Gotti, 2004 WL 2274712, at *3 ("The Second Circuit has repeatedly held that a thorough voir dire allows defendants to identify bias among jurors, thereby alleviating any risk created by not knowing jurors' names, addresses, and places of employment.").  Information regarding the general neighborhoods in which the prospective jurors live and the general nature of their work is sufficient.  The names of prospective jurors, to the extent they provide information about ethnicity, are not relevant to meaningful voir dire.  See Georgia v. McCollum, 505 U.S. 42 (1992) (rule articulated in Batson, prohibiting use of peremptory challenges in racially discriminatory manner, applies to defendants).

Use of a thorough questionnaire ensures that the defendants will learn sufficient information about the potential jurors in order to make informed decisions during the selection process.  Attached hereto as Exhibit 1 is the government's

proposed jury questionnaire.  This questionnaire is virtually identical to the questionnaire used in the DeMartino trial.

> B.  The Court Can Explain the Reasons for Anonymity and Partial Sequestration to Prospective Jurors in Neutral Terms that Will Diminish the Risk of Prejudice to the Defendants

Numerous courts have recognized that where anonymity is necessary, the jurors can receive an instruction from the court explaining the measures in a neutral way to prevent the jury from drawing any negative inference.  Although the due process clause of the Fifth Amendment protects the presumption of innocence, "there is no per se rule that it may not be burdened." Thomas, 757 F.2d at 1364; see also United States v. Scarfo, 850 F.2d 1015, 1026 (3d Cir. 1988).  Here, the burden is slight compared to the Court's interest in safeguarding the integrity of the judicial process and can be alleviated through a proper jury instruction.

Most commonly, courts have explained to jurors that their privacy and identities need protection from the media and the curious.  See, e.g., Thai, 29 F.3d at 801; Amuso, 21 F.3d at 1265; Tutino, 883 F.2d at 1133.  In the Colombo Family cases over which he presided, Judge Weinstein explained the jury's partial anonymity by telling prospective jurors that it would allow them to feel more comfortable in giving candid answers to the personal questions asked in voir dire and in the jury questionnaires.

This, too, is a reasonable explanation.  We respectfully ask the Court to adopt one or both of these explanations.[4]

As for partial sequestration, the government proposes that the jury be told that transportation and lunch are being provided to protect their privacy and to ensure that the trial can proceed expeditiously.  This explanation has been routinely given in cases where transportation to and from court has been provided, see, e.g., United States v. Nelson, 94 CR 823 (DGT); United States v. Orena, 93 CR 1366 (ERK); United States v. Malpeso, 93 CR 1365 (RJD); United States v. Cutolo, 93 CR 1230 (EHN); United States v. Thai, 91 CR 838 (CBA), and should be given here as well.

---

[4]  Other courts have told the jury that the necessity of an anonymous jury is due to the dangerousness of people who are not before the court.  See, e.g., United States v. Rosado, 728 F.2d 89, 95 (2d Cir. 1984).  We do not believe such an instruction would be appropriate here.

<u>CONCLUSION</u>

For the reasons set forth above, the government's motion for an anonymous, fully escorted and partially sequestered jury should be granted.

Dated:     Brooklyn, New York
           February 27, 2006

                                        Respectfully submitted,

                                        ROSLYNN R. MAUSKOPF
                                        United States Attorney
                                        Eastern District of New York
                                        147 Pierrepont Street
                                        Brooklyn, New York 11201

Katya Jestin
Deborah Sue Mayer
Thomas J. Seigel
Assistant U.S. Attorneys
     (Of Counsel)