```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,
                                           MEMORANDUM AND ORDER
                                           04-CR-911 (JS)
         -against-

ALPHONSE T. PERSICO
     also known as "The Kid" and
     "Allie Boy" and
JOHN J. DEROSS,
     also known as "Jackie"

                   Defendants.
----------------------------------X
APPEARANCES:
For Government:      John David Buretta, Esq.
                     Jeffrey A. Goldberg, Esq.
                     United States Attorneys Office
                     One Pierrepont Plaza
                     Brooklyn, NY 11201

For Defendants:
Alphonse Persico     Sarita Kedia, Esq.
                     Law Offices of Sarita Kedia
                     5 East 22nd Street, Suite 7B
                     New York, NY 10010

John DeRoss          Robert P. LaRusso, Esq.
                     LaRusso & Conway
                     145 Willis Avenue
                     Mineola, NY 11501
```

SEYBERT, District Judge:

        Defendants Alphonse Persico ("Persico") and John DeRoss ("DeRoss") were found guilty by a jury on December 28, 2007 of three of the six counts contained in the Superseding Indictment. Namely, Defendants were found guilty of the charges related to the murder of William Cutolo Sr. and witness tampering charges. They were found not guilty of the charges related to the shooting of

Joseph Campanella.  In addition to motions pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, presently pending is a request by Defendants for an evidentiary hearing related to their Rule 33 motions.  For the reasons discussed herein, Defendants' request for an evidentiary hearing is DENIED.

BACKGROUND

The following are facts relevant to the request for an evidentiary hearing.

On March 28, 2008, Defendants filed motions for judgments of acquittal pursuant to Federal Rule of Criminal Procedure 29.  On April 21 and 28, 2008, Defendants filed letters, which the Court accepted as Defendants' motion for a new trial pursuant to Federal Rule of Criminal Procedure 33.  On May 7, 2008, the Court scheduled a hearing to address issues raised by Defendants' Rule 33 motion; namely: (1) that Defendants discovered, after the close of trial, that the government misrepresented William Cutolo Jr.'s availability as a witness; and (2) one, and possibly more, of the government's witnesses, namely Marguerite Cutolo and Agent Gary Pontecorvo, perjured themselves during the trial or, alternatively, the government violated Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), by failing to turn over information regarding $1.65 million derived from illegal

activities that Mrs. Cutolo was permitted to keep, tax free.

On June 16, 2008, the government, counsel for Defendants, and DeRoss appeared for the hearing.[1] The Court heard argument from counsel regarding the second issue raised by Defendants' Rule 33 motion, but no witnesses were produced, and the appearance was adjourned without date. Although the government essentially conceded that it knew about the $1.65 million that Mrs. Cutolo was permitted to keep without penalty, but failed to inform the defense, it argued that there was no Brady/Giglio violation because defense was able to make effective use of the information during trial and the information is immaterial. (Hr'g Tr. 7-9, June 30, 2008.) The government, however, was unable to provide the Court with any details as to who Mrs. Cutolo informed about the money or who, within the government, made the determination regarding forfeiture and taxes.

Ultimately, the Court directed the government to conduct a "search to see when, if there has been any notation and approval of" a process by which Mrs. Cutolo was permitted to keep the $1.65 million and to submit affidavits by June 30, 2008. (Hr'g Tr. 36.) The Court further advised that it would then determine "whether or not we will have a hearing with live witnesses, not have a hearing,

---

[1] At Persico's request, the Court waived his appearance. (Order dated June 9, 2008; Docket Entry 685.)

3

and go on for oral argument on the Rule 29 and 33 motions." (Hr'g Tr. 38.)

On June 30, 2008, the government submitted an affidavit of Amy L. Walsh, Esq., a former Assistant United States Attorney, whom Mrs. Cutolo testified she informed about the $1.65 million. As Defendants correctly note, the Walsh Affidavit was vague and quite uninformative. Walsh affirmed that "[a]t some point at or around the time Marguerite Cutolo was relocated [late 2000 or early 2001], I became aware that Marguerite Cutolo had told the FBI that she was in possession of a large amount of cash found in the Cutolo home after the disappearance of William Cutolo, Sr." (Walsh Aff. ¶ 2.) "At some point later in 2001, the government decided to not seek forfeiture of, or taxes on, the funds referred to above." (Id. ¶ 4.) The Affidavit fails to provide much more information than the government provided to the Court at the June 16 appearance.

Subsequently, however, the government submitted, ex parte and under seal, additional documents to the Court, relating to the $1.65 million Mrs. Cutolo discovered after Cutolo Sr.'s disappearance.[2] (Docket Entry 690.) The Court received such

---

[2] The government submits such documents under seal pursuant to the deliberative process privilege. See Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 481-82 (2d Cir. 1999). The deliberative process privilege protects documents that are "predecisional and

4

documents on July 24, 2008 and conducted an in camera review.

Most recently, Defendants submitted additional materials in support of their Rule 33 motion for a new trial. Specifically, Defendants offer documents that were submitted to the Surrogate's Court, State of New York, County of Richmond, in an effort to obtain a declaration of death for Cutolo Sr. (Docket Entry 691.) Defendants' argue that these materials further demonstrate that Mrs. Cutolo did not previously tell the government about the $1.65 million as she testified or that the government assisted Mrs. Cutolo in suborning perjury in the Surrogate's Court proceeding. Defendants further contend that, in either event, the documents constitute Jencks Act material as well as Brady/Giglio material, which the government failed to produce.

DISCUSSION

At this point, the Court considers only whether Defendants are entitled to an evidentiary hearing with respect to issues brought to light by their Rule 33 motion.

The Court has discretion in determining whether to grant

---

deliberative" from disclosure. Id. at 482. Because the documents submitted under seal were "prepared in order to assist an agency decisionmaker in arriving at his decision," id., and reflect "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated[,]" they are entitled to the deliberative process privilege. Id. (internal quotation marks and citations omitted).

5

an evidentiary hearing in connection with a Rule 33 motion for a new trial. See United States v. Sasso, 59 F.3d 341, 351 (2d Cir. 1995) ("We will not reverse the denial of a new-trial motion or the refusal to conduct an evidentiary hearing absent an abuse of discretion."). Where the request for a new trial or evidentiary hearing is based on the allegation that there is "new evidence of perjury, 'a threshold inquiry is whether the evidence demonstrates that the witness in fact committed perjury.'" Id. (quoting United States v. White, 972 F.2d 16, 20 (2d Cir. 1992); see also United States v. Torres, 128 F.3d 38, 49 (2d Cir. 1997) ("Where the newly discovered evidence is the existence of allegedly perjured testimony, the defendant must first demonstrate that perjury was in fact committed."); United States v. Moore, 54 F.3d 92, 99 (2d Cir. 1995); United States v. Schlesinger, 438 F. Supp. 2d 76, 105-06 (E.D.N.Y. 2006). "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory . . . . Once this threshold demonstration of perjury has been met, however, a new trial is not foreordained." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001).

Defendants are unable, however, to satisfy this initial inquiry: that the witness in fact committed perjury. In fact, the

an evidentiary hearing in connection with a Rule 33 motion for a new trial. See United States v. Sasso, 59 F.3d 341, 351 (2d Cir. 1995) ("We will not reverse the denial of a new-trial motion or the refusal to conduct an evidentiary hearing absent an abuse of discretion."). Where the request for a new trial or evidentiary hearing is based on the allegation that there is "new evidence of perjury, 'a threshold inquiry is whether the evidence demonstrates that the witness in fact committed perjury.'" Id. (quoting United States v. White, 972 F.2d 16, 20 (2d Cir. 1992); see also United States v. Torres, 128 F.3d 38, 49 (2d Cir. 1997) ("Where the newly discovered evidence is the existence of allegedly perjured testimony, the defendant must first demonstrate that perjury was in fact committed."); United States v. Moore, 54 F.3d 92, 99 (2d Cir. 1995); United States v. Schlesinger, 438 F. Supp. 2d 76, 105-06 (E.D.N.Y. 2006). "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory . . . . Once this threshold demonstration of perjury has been met, however, a new trial is not foreordained." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001).

Defendants are unable, however, to satisfy this initial inquiry: that the witness in fact committed perjury. In fact, the

evidence demonstrates that Mrs. Cutolo testified truthfully as to informing the government about the $1.65 million, and Defendants' arguments otherwise are based on conjecture and hyperbole.

As defense counsel aptly demonstrated, almost none of Mrs. Cutolo's testimony was without trepidation or confusion. Mrs. Cutolo testified, although not without some waivering, that she informed the government at her first proffer session in February 2001 about the $1.65 million she discovered after her husband's disappearance. (Trial Tr. 624, 697-703.) She affirmed that Agent Gary Pontecorvo and AUSA Amy Walsh were present at the February 2001 proffer session and those are the persons whom she would have informed about the $1.65 million. (Trial Tr. 697.) When pressed further as to whether she had "a recollection during the course of [the proffer session], telling the agents and/or the assistant that [she] had had 1.6 million dollars?", she replied, "I don't remember. I really don't remember. I had to tell them because I had to. I don't remember." (Trial Tr. 703.) Later in the trial, Agent Gary Pontecorvo corroborated Mrs. Cutolo's testimony, namely that, sometime in early 2001 at the time the government was relocating Mrs. Cutolo and her family into the witness protection program, Mrs. Cutolo informed Pontecorvo that she had found a large sum of money, which he later learned to be approximately $1.6 million, after Cutolo Sr.'s disappearance. (Trial Tr. 5291-93.)

7

Agent Pontecorvo testified that even before learning the exact amount, he notified the United States Attorneys Office that Mrs. Cutolo had a large sum of money. (Trial Tr. 5294.) Pontecorvo also admitted that he failed to document such information in a 302. (Trial Tr. 5295.)

Subsequently, and at the direction of the Court, former AUSA Amy Walsh submitted an Affidavit in which she confirmed that "at or around the time Marguerite Cutolo was relocated, [she] became aware that Marguerite Cutolo had told the FBI that she was in possession of a large amount of cash found in the Cutolo home after the disappearance of William Cutolo, Sr." (Walsh Aff. ¶ 2.)

All of the evidence supports the fact that Mrs. Cutolo informed the government sometime in early 2001 that she had found approximately $1.6 million after her husband's disappearance. There is no evidence to the contrary, only argument. Specifically, Defendants argue, inter alia, that Mrs. Cutolo and Agent Pontecorvo had to be lying on the stand because there is no mention of the $1.65 million in the notes from the February 9, 2001 proffer session, in a 302, or in any other government document. (Trial Tr. 699-702; Persico April 21, 2008 Letter 3-4.) The lack of documentation, however, does not establish that the witnesses in fact committed perjury. Two witnesses, one of whom is a government agent, and a former AUSA involved in the investigation, swore,

8

under oath, that Mrs. Cutolo informed the government about the money sometime in early 2001. This assertion is further supported by documents filed with the Court under seal. (Docket Entry 690.)

Furthermore, Defendants most recent submission, which included documents submitted to the Surrogate's Court in connection with a petition to obtain a declaration of death for Cutolo Sr., do nothing to sway this Court. These documents in no way establish that Mrs. Cutolo did not disclose the $1.65 million to the government in 2001 or that she committed perjury during the Trial. (Docket Entry 691, Ex. B.) There is no proof that because Mrs. Cutolo failed to disclose to the Surrogate's Court the $1.65 million as an asset of Cutolo Sr.'s estate, she did not tell the government about the money. To be sure, it is an inconsistency, but considered together with the record as a whole, it does not establish that Mrs. Cutolo in fact committed perjury. Moreover, Amy Walsh's Affirmation to the Surrogate's Court speaks only to the investigation into Cutolo Sr.'s disappearance; it has nothing to do with Cutolo Sr.'s assets. (Id., Ex. I.) Similarly, the affirmation has no bearing on Mrs. Cutolo's veracity, or lack thereof.

Simply put, Defendants have failed to satisfy their initial burden. While a fair reading of the record demonstrates that Mrs. Cutolo was confused and may have testified mistakenly or

inconsistently concerning the exact date on which she informed the government about the $1.65 million, "incorrect testimony resulting from confusion, mistake, or faulty memory" is not perjury. Monteleone, 257 F.3d at 219. Furthermore, "simple inaccuracies or inconsistencies in testimony likewise do not rise to the level of perjury." Schlesinger, 438 F. Supp. 2d at 106. There is no evidence, only arguments and disbelief, that Mrs. Cutolo committed perjury with respect to informing the government about the $1.65 million in early 2001. Accordingly, the Court DENIES Defendants' request for an evidentiary hearing based on the existence of perjury.

Alternatively, Defendants argue that if Mrs. Cutolo did not perjure herself during the trial, and the government was aware of the $1.65 million that Mrs. Cutolo was permitted to keep, tax free, that the government violated Brady/Giglio in failing to disclose such information to the defense. Relying on United States v. Rodriguez, 496 F.3d 221 (2d Cir. 2007), Defendants urge that a hearing is necessary to determine the extent of the Brady/Giglio violation. The Court disagrees.

"Brady and its progeny require the Government to disclose material information that is 'favorable to the accused, either because it is exculpatory, or because it is impeaching.'" Rodriguez, 496 F.3d at 225 (quoting Strickler v. Greene, 527 U.S.

263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)). The decision in Giglio extended the government's obligation to include such information "useful solely for impeaching the credibility of a government witness." Schlesinger, 438 F. Supp. 2d at 110. The Court does not address at this time Defendants' allegations of a Brady/Giglio violation. Rather, the Court focuses solely on whether a hearing is necessary in connection with the Brady/Giglio issue.

In Rodriguez, the Court was faced with the question of whether Brady and its progeny apply to information that has been memorialized in tangible form. Although not reaching a conclusion regarding whether there had been a Brady violation, the court held that "[t]he obligation to disclose information covered by the Brady and Giglio rules exists without regard to whether that information has been recorded in tangible form." Rodriguez, 496 F.3d at 226. Ultimately, the Second Circuit remanded so that the district court could conduct further proceedings to evaluate the nature of the undisclosed material. Id. at 227. The underlying Brady/Giglio issue in Rodriguez centered around a government witness who had testified on direct examination that she had "lied about everything." Id. As the Second Circuit more fully explained,

> [t]he Government declined to disclose the substance of [the witness'] lies because it contended at trial that it had satisfied all

11

> of its obligations under Brady, and the district court, which ruled on a different basis, never considered whether the failure to disclose [the witness'] lies would violate Brady. Because we do not know what [the witness'] lies were, we cannot determine whether disclosure was mandated under Brady/Giglio or whether the Government's refusal to make disclosure more extensive than [the witness'] testimony that she lied 'about everything' cause the defendant prejudice.

Id.

The facts here, however, are quite distinguishable from Rodriquez. Unlike Rodriquez, the Court is not faced with a vague and blanket statement that a witness "lied about everything." Id. Rather, Defendants take issue with a very specific fact and the lack of disclosure concerning that fact. Namely, that the government failed to disclose to the defense that Mrs. Cutolo found $1.65 million after Cutolo Sr.'s disappearance and the government did not seek forfeiture or taxes with respect to such monies. While not every specific detail surrounding the $1.65 million has come to light, the facts are markedly different from Rodriquez where the undisclosed information was completely unknown. Accordingly, the Court finds it unnecessary to conduct a hearing with respect to the alleged Brady/Giglio violations and will decide whether such violations exist and, if so, whether they caused Defendants prejudice when the Court addresses Defendants' Rule 29 and 33 motions.

CONCLUSION

For the reasons discussed herein, the Court DENIES Defendants' request for an evidentiary hearing. Additionally, the Court finds it unnecessary to hold a hearing or oral argument with respect to Defendants' Rules 29 and 33 motions. Unless the parties are informed otherwise, the Court will be issuing a decision on such motions, which are fully briefed, in the near future.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
August  28 , 2008